Benny Cavazos **VALVERDE**, Appellant

v.

**The STATE of Texas, Appellee**

**No. 04–14–00338–CR**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: February 10, 2016

Discretionary Review Refused
June 29, 2016

John G. Jasuta, David A. Schulman, Austin, for Appellant.

Edward F. Shaughnessy, III, San Antonio, for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice Rebeca C. Martinez, Justice Jason Pulliam, Justice

## OPINION

Opinion by: Sandee Bryan Marion, Chief Justice

Benny Cavazos Valverde was convicted by a jury of murder. On appeal, Valverde contends the evidence is insufficient to support the jury's rejection of his claim that he acted in self-defense. We affirm the trial court's judgment.

### STANDARD OF REVIEW AND APPLICABLE LAW

To prevail on a claim of self-defense with the use of deadly force, a defendant must prove: (1) he would have been justified in using force against the other person; and (2) it was reasonable to believe that "deadly force [was] immediately necessary [for protection] against the other's use or attempted use of unlawful deadly force." TEX. PENAL CODE ANN. § 9.32(a) (West 2011). "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* at § 9.31(a).

Once a defendant produces some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.

Crim.App.2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App.1991). To meet its burden of persuasion, the State is not required to produce additional evidence. *Saxton*, 804 S.W.2d at 913. If the jury finds the defendant guilty, it has made an implicit finding against any defensive theory raised by the defendant. *Id.* at 914; *see also Zuliani*, 97 S.W.3d at 594.

When a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his self-defense claim, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914; *see Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim.App.2010).

## DISCUSSION

Valverde does not challenge the sufficiency of the evidence to support the jury's finding of the essential elements of murder beyond a reasonable doubt. Instead, Valverde challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim. This is consistent with his requesting a self-defense instruction at trial since "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but

interposes [a] justification to excuse the otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d 647, 659 (Tex.Crim.App. 2007) (emphasis in original). With regard to the essential elements of the offense, the jury was charged that Valverde committed the offense of murder if, with the intent to cause serious bodily injury to Ramirez, he committed an act clearly dangerous to human life that caused Ramirez's death. In this case, the evidence is undisputed that Valverde shot Ramirez, which was an act clearly dangerous to human life, and Ramirez died as a result. Accordingly consistent with Valverde's request for the self-defense instruction, the evidence establishes every essential element of the offense of murder beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. We next examine whether the jury "also would have found against [Valverde] on the self-defense issue beyond a reasonable doubt." *Id.*

Valverde testified he knew Ramirez from childhood, and they were friends. Another witness testified Valverde told him Ramirez was a bully when they were kids, and Ramirez used to pick on Valverde and "beat the crap out of him one day." The witness also stated Valverde told him that was in the past.

Most of the witnesses present at the bar prior to or at the time of the shooting testified Ramirez was loud from the moment he arrived at the bar and appeared to be intoxicated. Most of the witnesses further testified Ramirez began insulting Valverde using profanities, and several witnesses testified Ramirez was challenging Valverde to fight. Although Valverde laughed off the insults in the beginning and asked Ramirez to leave him alone on several occasions, two witnesses testified Valverde became angry or upset. None of the witnesses saw either man with a gun.

In addition to insulting him with vulgar language, Valverde testified Ramirez pointed at his waist and told Valverde three times that he had something for him when he finished his beer. When Ramirez finished his beer, he stood up, and Valverde saw a bulge at his waist which Valverde believed was a weapon. Valverde wrapped his arms around Ramirez and struggled with him over the gun. Valverde testified both men's hands were on the gun when it discharged. Valverde admitted he left the scene before the police arrived and disposed of the gun.

Gloria Casas, the only witness who observed the altercation,[1] testified she heard shoes shuffling and then saw Valverde aggressively grab Ramirez with his right hand and push his other hand into Ramirez's mid-section. Casas then heard a gunshot, and Ramirez fell.

In his brief, Valverde asserts no evidence in the record indicates he harbored any anger toward Ramirez or initiated the altercation. Valverde also asserts no evidence in the record indicates he was carrying the gun. Valverde further asserts the evidence established he and Ramirez were physically struggling for the gun when it discharged. Valverde's assertions, however, are based on his testimony.

In our review, we defer to the jury's assessment of the credibility of the witnesses, and the jury in this case could have disbelieved Valverde's testimony. *See Brooks*, 323 S.W.3d at 899; *Smith v. State*, 355 S.W.3d 138, 146 (Tex.App.–Houston [1st Dist.] 2011, pet. ref'd) (noting defendant's testimony does not conclusively prove a claim of self-defense because jury could reject the testimony). With regard to whether Valverde harbored any anger toward Ramirez, two witnesses testified that Valverde became angry or upset at Ramirez's insults. With regard to the initiation of the altercation, the jury could have inferred that Valverde initiated the physical altercation based on Casas's testimony that Valverde aggressively grabbed Ramirez with one hand while placing his other hand in Ramirez's mid-section. *See Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim.App.2007) (noting juries are permitted to draw multiple reasonable inferences from the evidence (direct or circumstantial) as long as each inference is supported by the evidence presented at trial). The jury also could have rejected Valverde's testimony that both men were struggling over the gun when the shot discharged because testing showed Ramirez did not have any gunshot residue on his hands. The jury further could have rejected Valverde's testimony that he was not in possession of the gun prior to the shooting. Although no witness saw either man with the gun, the evidence established that Valverde fled with the gun and disposed of it, thereby preventing any tracing of its ownership. The jury could have reasonably inferred that if the ownership of the gun would be traced to Ramirez, Valverde would not have disposed of the gun. Finally, the jury was entitled to consider Valverde's actions in leaving the scene after the shooting. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex.Crim.App.2007) (noting "factfinder may draw an inference of guilt from the circumstance of flight"); *Kirk v. State*, 421 S.W.3d 772, 781 (Tex. App.–Fort Worth 2014, pet. ref'd) (referencing flight from scene as evidence jury could consider in rejecting self-defense claim).

Having reviewed all of the evidence in the light most favorable to the prosecution,

1. One of the witnesses had exited the bar before hearing the gunshot. Another witness testified his attention was focused forward, and he did not observe the shooting. Two other witnesses testified they were looking at the jukebox when the shot was fired.

we conclude the jury rationally could have found each element of the offense was proven beyond a reasonable doubt, and rationally could have rejected Valverde's self-defense claim.

### CONCLUSION

The judgment of the trial court is affirmed.